UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――X

SUZANNE GRANGER and THOMAS KLOS,

                Plaintiffs,                   CV-05-3607 (SJF)(ARL)

   -against-

                                      **OPINION & ORDER**

MEL HARRIS and COMMERCE BANCORP., INC.

                Defendants.

―――――――――――――――――――――――――X

FEUERSTEIN, J.

On August 1, 2005, *pro se* plaintiffs Suzanne Granger (Granger) and Thomas Klos (Klos)

(collectively, "plaintiffs") commenced this action against Mel Harris (Harris) and Commerce

Bank N.A. i/s/h as Commerce Bancorp, Inc. (Commerce)[1], alleging, *inter alia*, violations of 18

U.S.C. § 1341 and 42 U.S.C. §§ 407, 1983 and 1985.  Harris now moves pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure for judgment on the pleadings and Commerce separately

moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint

as against it.  For the reasons stated herein, Harris's motion is granted in part and denied in part

and Commerce's motion is granted in part and denied in part.


I.      Background


―――――――――――――――――――

[1] Commerce's application to substitute Commerce Bank N.A. in place of Commerce
Bancorp, Inc. is granted and the clerk of the Court is directed to amend the caption of this action
accordingly.

1

A.    Factual Background[2]

At all relevant times, Granger received monthly Social Security disability benefits. (Complaint [Compl.], ¶ 3).

On or about April 12, 2004, Harris, as attorney for LR Credit, LLC, filed a summons and complaint in a consumer credit action in the Nassau County District Court entitled LR Credit, LLC v. Granger, index no. 14941-04 (the state court action). (See Summons and Complaint in the District Court, Nassau County, Memorandum of Law in Support of Harris's Motion for Dismissal [Harris Mem.], Exhibit [Ex.] A)[3]. An affidavit of service filed in the state court action on June 14, 2004 indicates that Granger was purportedly served with the summons and complaint in May 2004. (Harris Mem., Ex. B).[4] On September 23, 2004, a judgment on default was entered against Granger in the amount of six thousand five hundred twelve dollars and twenty-one cents ($6512.21) in the state court action. (Harris Mem., Ex. C). Harris served Commerce with a restraining notice in the state court action dated December 8, 2004. (Affidavit of

---

[2] As is required on motions pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiffs. They do not constitute findings of fact by this court.

[3] On a motion to dismiss, a court may take judicial notice of public records, such as documents filed in another court, to establish the existence of the documents and the fact of such litigation, but not for the truth of the matters asserted therein. See Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006); Kramer v. Time Warner Inc., 937 F.2d 767, 773-774 (2d Cir. 1991). Accordingly, I may properly consider the documents filed in the state court action on these motions. However, I may not, and have not, considered the Affidavit of Christopher J. Tucci, or its exhibits B through D, on these motions.

[4] Since the fact of whether Granger was actually served with the summons and complaint in the state court action is a disputed issue in this case, I take judicial notice only of the affidavit of service being filed in the state court action.

Christopher J. Tucci in Support of Commerce's Motion to Dismiss [Tucci Aff.], Ex. A).

In or about May 2004, Klos opened five (5) checking accounts at a branch of Commerce in Massapequa, New York. (Compl., ¶ 8). Thereafter, Klos added Granger to two (2) of his checking accounts at Commerce (the joint accounts). (Compl., ¶ 9). It is undisputed that Granger had her Social Security disability benefits directly deposited into one of the accounts from July 2004 to December 2004. (Compl., ¶¶ 9-10).

According to plaintiffs, in the morning of December 15, 2004, Klos verified that the Commerce checking account that he frequently used with a debit card (the debit card account) had a balance of seven hundred eleven dollars and thirty-eight cents ($711.38). (Compl., ¶ 11). Plaintiffs allege that at 1:36 p.m. on that same date, Klos used his debit card to make a purchase in the amount of twenty-four dollars and forty-two cents ($24.42), which amount was withdrawn from the debit card account. (Compl., ¶ 12). Plaintiffs further allege that at 2:36 p.m. that same date, Klos attempted to use his debit card again to make a purchase in the amount of eight dollars and sixty cents ($8.60), but the transaction was declined for insufficient funds (ISF). (Compl., ¶ 13).

Plaintiffs allege that Klos immediately contacted Commerce and was transferred to a "Jane Doe" at the "Levy Department," who told him that a lien had been placed against two (2) of his accounts and that he needed to contact Harris to address the issue. (Compl., ¶ 14). According to plaintiffs, Klos informed "Jane Doe," *inter alia*, that the funds in the accounts in question were either his alone, and, therefore, unrelated to Granger's debt; or were part of Granger's Social Security disability benefits and, therefore, were not subject to levy or garnishment. (Id.). Plaintiffs further allege that Klos informed "Jane Doe" that Commerce

3

should take no further action regarding the lien until he could address the issue. (Id.). According to plaintiffs, "Jane Doe" advised Klos that she would make such a notation and that the account balance would remain unchanged, with a negative balance, until the matter was resolved. (Id.).

Plaintiffs allege that on or about December 20, 2004, Klos noticed that the joint accounts had been closed by Commerce and that a subsequent bank statement indicated that Commerce had deducted a one hundred dollar ($100.00) fee, then closed the accounts. (Compl., ¶ 15). Plaintiffs allege that unidentified Commerce employees told Klos that the remaining balances of those accounts had been sent to Harris. (Id.).

### B.    Procedural History

On August 1, 2005, plaintiffs commenced this civil rights action against Harris and Commerce pursuant to, *inter alia*, 42 U.S.C. §§ 407, *et seq.*, 1983 and 1985, alleging violations of their Fourteenth Amendment due process rights, "misapplication of property," fraud and deception. In addition, they allege violations of the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166), (Compl., "Preliminary Statement"), and a violation of 18 U.S.C. § 1341 (mail fraud) on the part of Harris (Compl., ¶ 23). Plaintiffs seek a declaratory judgment, injunctive relief, compensatory damages and punitive damages. (Compl., ¶¶ A-E).

With respect to their claims against Harris, plaintiffs allege (1) that Harris never "properly prosecuted any lawsuit or other legal process to obtain a bona fide lien against Granger;" (2) that "Granger has never been served with any type of document, notice, summons or process which gave or provided notice of any proceeding or civil action which could have legally resulting with

[sic] a lien against her;" (3) that Harris has never "contacted or communicated with Granger regarding an alleged debt, lawsuit, civil action or lien;" (4) that Harris "knowingly and intentionally took calculated steps to defraud plaintiffs by submitting to [Commerce] a document that either contained false information and/or was obtained fraudulently, with the intended result being to induce [Commerce] into turning over the funds in plaintiffs' accounts to him;" and (5) that Harris fraudulently obtained a lien against Granger by "deceiving a court in Hempstead, NY into believing that plaintiff Granger had been served with whatever summons and/or complaint were procedurally required for a default judgment and lien to be entered." (Compl., ¶¶ 16-17, 23-24).

With respect to their claims against Commerce, plaintiffs allege (1) that Commerce never provided them "with proof of a legally binding and legitimate lien which would legally justify their charging [plaintiffs] a $100.00 fee and disposing of the balance of their joint checking accounts;" (2) that Commerce never investigated their allegations that "Harris was acting fraudulently and in bad faith with his claim of having a legitimate and legal lien;" (3) that Commerce never demanded or received proof of a lien from Harris; (4) that Commerce and each of its employees with whom plaintiffs have spoken have consistently defended its actions; (5) that Commerce failed to fulfill its "legal obligation * * * to protect and maintain plaintiffs' funds and financial information entrusted to [it];" and (6) that Commerce acted "intentionally, deliberately and negligently," in that it knew or should have known that [its] actions were unlawful and improper, yet [it] proceeded nevertheless to seize plaintiffs' funds without legal authority, [to] deny plaintiffs a procedure to have the funds returned, and [to] cooperate fully with defendant Harris' fraud scheme." (Compl., ¶¶ 18-20).

Harris now moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings on the basis that the Rooker-Feldman doctrine bars the plaintiffs' claims. Commerce moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint as against it for failure to state a claim.

## II. Discussion

### A. Standard of Review

The standard of review on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is the same standard applied to a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See, Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). A motion made pursuant to either Rule 12(b)(6) or Rule 12(c) should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003) (internal quotations and citations omitted). In deciding the motion, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); New v. Ashcroft, 293 F.Supp.2d 256, 257 (E.D.N.Y. 2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt, 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. See, New, 293 F.Supp.2d at 257 (citing Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 [2d Cir. 1995]). The Court must limit itself to the facts alleged in the

6

complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Spencer Trask Software and Information Services, LLC v. RPost Intern. Ltd., No. 02 Civ. 1276, 2003 WL 169801, at * 4 (S.D.N.Y. Jan. 24, 2003).

Moreover, a *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 [1972]). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 [2d Cir. 1994]). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983). If it is clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

B.    The Rooker-Feldman Doctrine

Pursuant to what is commonly known as the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction over suits that are, in substance, appeals from state-court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-415, 44 S.Ct. 149, 68 L.Ed.2d 362

(1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75

L.Ed.2d 206 (1983). The Rooker-Feldman doctrine bars challenges in federal court to the

substance of state-court decisions which are more properly raised on appeal, even where such

challenges appear to raise questions of federal law on their face, i.e. by challenging the state-

court judgment on due process grounds. See Hoblock v. Albany County Board of Elections, 422

F.3d 77, 87 (2d Cir. 2005); Mareno v. Dime Savings Bank of New York, 421 F.Supp.2d 722, 726

(S.D.N.Y. 2006).

　　The Supreme Court recently narrowed the Rooker-Feldman doctrine and limited its

application to "cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp.,

544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); see also Lance v. Dennis, 546 U.S.

459, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)(emphasizing the narrowness of the Rooker-

Feldman rule); McKithen v. Brown, ___ F.3d ___, 2007 WL 744728, at * 4 (2d Cir. Mar. 13,

2007) (holding that the Rooker-Feldman doctrine is meant to occupy "narrow ground," as

evidenced by the fact that the Supreme Court has only applied the doctrine twice–in the two

cases after which the doctrine was named). There are four requirements for the application of the

Rooker-Feldman doctrine: (1) the federal plaintiff must have lost in state court; (2) the plaintiff's

injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the

district court to review and reject that state court judgment; and (4) the state court judgment must

have been rendered prior to the commencement of the district court proceedings. Hoblock, 422

F.3d at 85. The first and fourth requirements are "procedural," while the second and third

8

requirements are "substantive." Id. Clearly, Granger lost in the state court action and judgment was rendered in the state court action prior to the commencement of this action and, thus, the procedural requirements of the Rooker-Feldman doctrine are satisfied. However, Klos was not a party to the state court action and defendants do not allege that Klos was in privity to Granger. See, e.g. Lance, 546 U.S. 459, 126 S.Ct. at 1201 (stating that Rooker-Feldman is inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding). Therefore, the Rooker-Feldman doctrine is inapplicable to Klos's claims.

        a.     Substantive Requirements of Rooker-Feldman Doctrine

The Rooker-Feldman doctrine applies not only to claims that were directly addressed in prior state court proceedings, but to claims that are "inextricably intertwined" with a prior state court determination. Feldman, 460 U.S. at 483-84 n. 16. The Supreme Court has provided "little guidance in determining when claims are 'inextricably intertwined," Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002), leaving the Second Circuit and other federal courts "struggl[ing] to define Rooker-Feldman's reach." Hoblock, 422 F.3d at 84. "[T]he phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in Exxon Mobil." Id. at 87.

Harris contends that since plaintiffs essentially request that this Court determine that judgment was erroneously entered against Granger, their claims are barred by the Rooker-Feldman doctrine. He notes that plaintiffs made no efforts to vacate the state court judgment and did not challenge the service of process on Granger in the state court. Commerce contends that since plaintiffs did not invoke any of the state law remedies available to them, this action is

9

merely a "back door attempt" to review the judgment entered in the state court action and is, thus, precluded by the Rooker-Feldman doctrine.

To the extent plaintiffs claim (1) that Harris wrongfully obtained a default judgment and/or lien against Granger without properly serving her with process; and (2) that the procedures Harris followed in obtaining the default judgment and/or lien against Granger are unconstitutional, Granger's claims are barred by the Rooker-Feldman doctrine, since, in essence, they seek to overturn the default judgment entered against Granger in the state court action. See, e.g. MacPherson v. State Street Bank and Trust Company, 452 F.Supp.2d 133, 139 (E.D.N.Y. 2006) (holding that if the injury is the state-court's application of an unconstitutional statute, the plaintiff's claim is essentially a de facto appeal of a prior state court ruling and is prohibited by Rooker-Feldman). Moreover, the following claims of Granger are also precluded by the Rooker-Feldman doctrine: (1) that Harris never "properly prosecuted any lawsuit or other legal process to obtain a bona fide lien against Granger;" (2) that "Granger has never been served with any type of document, notice, summons or process which gave or provided notice of any proceeding or civil action which could have legally resulting with [sic] a lien against her;" and (3) that Harris has never "contacted or communicated with Granger regarding an alleged debt, lawsuit, civil action or lien," as those claims merely challenge the validity of the state court judgment.

However, since the Supreme Court's decision in Exxon Mobil, claims that only collaterally attack a state court judgment are not barred under the Rooker-Feldman doctrine. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party * * *, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Exxon Mobil,

were actually social security benefits, they fail to show that Commerce has violated section 407. Commerce further contends that, in any event, plaintiffs cannot show that the funds that were restrained are entitled to an exemption under section 407 since the two accounts at issue consisted of both exempt funds and non-exempt funds and the non-exempt funds were sufficient to cover the amount of the levy. In addition, Commerce contends that plaintiffs have a state law remedy available to them to show that defendants restrained exempt funds pursuant to N.Y. C.P.L.R. §§ 5222(b), 5239 and 5240, yet have failed to pursue any such remedies.

42 U.S.C. § 407(a) provides, in relevant part, that "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process * * *." The purpose of this exemption is to protect social security beneficiaries from the claims of creditors. Dionne v. Bouley, 757 F.2d 1344, 1355 (1st Cir. 1985). There is no dispute that Granger was entitled to the exemption created by section 407(a) with respect to the social security funds she had directly deposited into the accounts at issue. See Philpott v. Essex County Welfare Board, 409 U.S. 413, 416, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973).

However, section 407(a) does not protect non-exempt funds, i.e. funds that do not consist of social security benefits, from levy or attachment, even if those funds are commingled with exempt funds See, NCNB Financial Services, Inc. v. Shumate, 829 F.Supp. 178, 180-181 (W.D.Va. 1993), aff'd sub nom Nationsbank of North Carolina, N.A. v. Shumate, 45 F.3d 427 (4th Cir. 1994)(holding that funds that are reasonably traceable to social security income are protected even if they are commingled in a bank account with funds from other sources); Heymann v. Brechner, No. 95 Civ. 1329, 1996 WL 580915, at * 7 (S.D.N.Y. Oct. 9, 1996)

12

(holding that 407(a) applies to funds which are reasonably traceable to social security income that are deposited in a bank account and commingled with other assets); Smith v. Accenture United States Group Long-Term Disability Ins. Plan, No. 05 C 5942, 2006 WL 2644957, at * 5 (N.D.Ill. Sept. 13, 2006) (holding that non-exempt funds, even if commingled with section 407(a) monies, are not protected from levy or attachment); S&S Diversified Services, L.L.C. v. Taylor, 897 F.Supp. 549, 552 (D.Wyo. 1995) (accord); Dean v. Fred's Towing, 245 Mont. 366, 801 P.2d 579, 582 (Mont. 1990) (accord); see also In re Estate of Merritt, 272 Ill.App.3d 1017, 651 N.E.2d 680, 682, 209 Ill.Dec. 502 (1st Dist. 1995) (holding that social security benefits which are commingled with other funds retain their 407(a) exemption provided that they are reasonably traceable). Moreover, the 407(a) exemption of social security benefits applies even if the funds are commingled in an account which the beneficiary shares with another person. S&S Diversified, 897 F.Supp. at 552; Hatfield v. Cristopher, 841 S.W.2d 761 (Mo.App. W.D. 1992). Once it is shown that a bank account contains commingled funds, the burden shifts to the beneficiary to prove that the funds restrained constitute exempt social security benefits. In re Estate of Merritt, 272 Ill.App.3d 1017, 651 N.E.2d at 683; see also S&S Diversified, 897 F.Supp. at 552 (holding that the burden of proving what funds in a bank account, held jointly by the judgment debtor and another depositor, are not subject to execution is on the depositors).

Contrary to Commerce's contention, plaintiffs' allegation that the accounts at issue contained exempt social security benefits is sufficient to state a claim under section 407(a) at the pleadings stage, notwithstanding that those funds may have been commingled with non-exempt funds. See, e.g. Demp v. Emerson Enterprises, 504 F.Supp. 281, 284 (E.D.Pa. 1980) (holding that one who proceeds with a garnishment action against exempt funds would owe an appropriate

13

remedy to the social security recipient under section 407). At trial or on a motion for summary judgment, Commerce may show that the funds were, in fact, commingled with non-exempt funds and, at that stage, the burden will shift to plaintiffs to prove that the funds restrained were actually Granger's social security benefits.[5] However, Commerce's reliance on evidence outside the pleadings or on documents of which I may not take judicial notice is inappropriate at this stage. Accordingly, the branch of Commerce's motion which seeks dismissal of plaintiffs' section 407 claim is denied.

Moreover, Commerce's reliance on Jonas v. Citibank, N.A., 414 F.Supp.2d 411, 418 (S.D.N.Y. 2006), for the proposition that plaintiffs fail to state a claim for a constitutional violation is misplaced. Indeed, retention of exempt social security funds free from attachment has been recognized as a valid property interest entitled to due process protection. See Dionne, 757 F.2d at 1350; see also Mayers v. New York Community Bancorp, Inc., No. CV-03-5837, 2005 WL 2105810, at * 13-14 (E.D.N.Y. Aug. 31, 2005) (denying defendants' motion to dismiss plaintiffs' due process claims). Thus, plaintiffs' complaint, liberally read, states a valid due process claim of whether the attachment procedure followed here afforded plaintiffs appropriate notice and a sufficient opportunity to assert Granger's exemption claim under section 407(a). That question cannot be answered at the pleadings stage. Accordingly, the branch of

---

[5] Under New York law, there is a rebuttable presumption with respect to joint bank accounts that each holder of the account is said to be possessed of the whole account and each is entitled to half its contents. See Heymann, 1996 WL 580915, at * 6. However, if the judgment debtor establishes that none of the funds in a particular account belong to him or her, a creditor may not collect on the judgment from that account. Id. Accordingly, by alleging that Klos informed Commerce that the funds in the accounts at issue were his alone and unrelated to Granger's debt (Compl., ¶ 14), plaintiffs state at least a colorable claim that the restraining notice at issue should not have been applied to the funds in the accounts at issue.

14

Commerce's motion which seeks dismissal of plaintiffs' due process claim is denied.

Commerce relies on two cases from this Court, Mayers, 2005 WL 2105810 and Huggins v. Pataki, No. 01 CV 3016, 2002 WL 1732804 (E.D.N.Y. Jul. 11, 2002), in support of its position that there is a split among judges in this Court "regarding whether C.P.L.R. § 5222, by allowing a temporary restraint to be placed on Social Security in violation of 42 U.S.C. § 407 is unconstitutional under the Supremacy Clause of the United States Constitution." That reliance is misplaced. In Huggins, the plaintiff's bank account contained only exempt social security funds for at least six months prior to the events at issue in that case. 2002 WL 1732804, at * 3. The plaintiff commenced suit challenging the constitutionality of New York's garnishment statute, N.Y. C.P.L.R. § 5222 (section 5222), in light of technological advancements such as direct electronic deposit of social security funds. Id. Judge Gleeson granted summary judgment to the defendant in light of the Second Circuit's decision in McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir. 1985), that held that section 5222 did not violate due process requirements[6]. Id. at *3. Judge Gleeson expressly declined to reapply the balancing test of governmental and private interests established by Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to the intervening technological change of direct deposit. In addition, Judge Gleeson found that although a permanent attachment of social security funds would be unconstitutional under the Supremacy Clause, in order to find that a temporary seizure constitutes an impermissible attachment the court must examine the duration of the seizure as well as the promptness and extent of the notice received. Id. at * 4. Judge Gleeson held that "[s]ince that

---

[6] Since McCahey only involved New York's social security statute, N.Y. Soc. Ser. L. § 137, and not section 407(a), the Supremacy Clause was not implicated in that case.

15

test is essentially the same as the inquiry into the due process violation, * * * the possibility of a temporary loss of access to benefits does not constitute a violation of 42 U.S.C. § 407(a)." Id.

However, Huggins involved a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, whereas this case involves a dismissal pursuant to Rule 12(b)(6) and, thus, a different standard of review. Moreover, unlike the bank account in Huggins, plaintiffs' bank accounts contained commingled exempt and non-exempt funds. Most significant, however, is that here, plaintiffs do not challenge the constitutionality of section 5222. Rather, they contend, *inter alia*, that they did not have notice of the state court proceeding, that the judgment rendered therein is invalid and, thus, that the underlying restraining notice was invalid.[7]

In Mayers, the plaintiffs also challenged the constitutionality of section 5222 as applied to bank accounts containing only exempt social security funds that were electronically deposited. 2005 WL 2105810, at * 1. Senior Judge Sifton, *inter alia*, denied the defendants' Rule 12(b)(6) motion to dismiss the plaintiffs' section 1983 Supremacy Clause claim on the ground that at the pleadings stage, it could not be said that the plaintiff could prove no set of facts which would entitle them to relief on that claim. Id. at * 17. Here, plaintiffs do not raise a Supremacy Clause claim and, as already noted, do not challenge the constitutionality of section 5222. Moreover, the bank accounts at issue do not contain only exempt social security funds.

---

[7] The Second Circuit in McCahey specifically noted that the plaintiff therein had notice of the state court proceeding in which the underlying judgment had been rendered and did not contest the validity of that judgment, 774 F.2d 543, 545 (2d Cir. 1985), thus, rendering the holding in that case, on which Huggins was based, inapposite to this case.

2.    42 U.S.C. § 1983 Claims[8]

Commerce contends that plaintiffs' complaint fails to state a claim under section 1983, *inter alia*, because Commerce was not acting under color of state law.

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish a deprivation of constitutional rights "under color of state law." See, Briscoe v. LaHue, 460 U.S. 325, 329-330, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(citation omitted). It is undisputed that no state official was directly involved in the restraint of plaintiffs' bank accounts.

However, liability under §1983 may be imposed upon private individuals who are not state actors (1) if there exists a "sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself" (the "close nexus/joint action" test); (2) when the State "has exercised coercive power or had provided such significant encouragement, either overt or covert," that the action of the private entity must be deemed that of the State (the "state compulsion" test); or (3) where the private entity "has exercised powers that are traditionally the exclusive prerogative of the State"

---

[8]   42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress* * *."

(the "public function" test). <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004-1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)(internal quotations and citations omitted).

The Second Circuit has not addressed the issue of whether a bank acts under "color of state law" when it restrains a bank account pursuant to N.Y. C.P.L.R. § 5222 and the two courts that have considered the issue in this Circuit are split. In <u>Johnson v. Chemical Bank</u>, No. 96 Civ. 4262, 1996 WL 706893, at * 5 (S.D.N.Y. Dec. 9, 1996), Judge Sotomayer granted summary judgment dismissing, *inter alia*, the plaintiff's section 1983 claims and held that "[t]he mere fact that defendants utilized state statutes to pursue a state court remedy against the plaintiff does not constitute 'state action' by private parties." In <u>Mayers</u>, 2005 WL 2105810, at * 9-10, Senior Judge Sifton denied the defendant banks' motion to dismiss and held that because the defendant banks believed that section 5222 required them to restrain the accounts at issue, irrespective of their contents, or risk being found in contempt of court, the plaintiffs satisfied the "state compulsion" test, at least at the pleadings stage.

Initially, <u>Johnson</u> is inapposite insofar as that case involved a motion for summary judgment in which Judge Sotomayer expressly considered evidence beyond the four corners of the pleadings. Moreover, Judge Sotomayer did not explicitly consider the "state compulsion" theory, finding only that plaintiffs did not allege that any of the defendants joined with a state actor or that a public entity conspired with the defendants to deprive the plaintiff of his constitutional rights. 1996 WL 706893, at * 5. Accordingly, I find that plaintiffs' complaint raises sufficient factual issues under the "state compulsion" theory to withstand dismissal at the pleadings stage. Therefore, the branch of Commerce's motion which seeks dismissal of

plaintiffs' section 1983 claims is denied.[9]

### 3. Section 1985 Claims[10]

Commerce contends that plaintiffs' claims pursuant to 42 U.S.C. § 1985 fail as a matter

of law because they do not allege that Commerce's actions were motivated by a discriminatory

animus.

In order to state a claim under section 1985, a plaintiff must allege "some racial or

perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."

See Palmieri v. Lynch, 392 F.3d 73, 86 (2d Cir. 2004), cert. denied, 126 S.Ct. 424, 163 L.Ed.2d

323 (2005) (citing Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999)); see also Brown, 221

F.3d at 341. Since plaintiffs fail to allege that a class-based animus existed, the complaint fails

to state a claim under section 1985. See, Palmieri, 392 F.3d at 86-87. Accordingly, the branch

of Commerce's motion which seeks dismissal of plaintiffs' section 1985 claim is granted and

that claim is dismissed. For the same reasons, I *sua sponte* dismiss plaintiffs' section 1985 claim

against Harris as well.

---

[9] In light of this determination, it is unnecessary to consider Commerce's contention that I decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

[10] The elements of a claim under § 1985(3) are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States." Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000).

4. Americans with Disabilities Act (ADA) Claim[11]

Commerce contends that plaintiffs' complaint fails to state a claim under the ADA because it does not allege that Commerce discriminated against Granger due to her disability or failed to accommodate her disability.

In order to state a claim under the ADA, a plaintiff must allege (1) that he or she had a disability; (2) that he or she is otherwise qualified for the benefit that has been denied; and (3) that he or she has been denied that benefit by reason of his or her disability. Weixel v. Board of Education of City of New York, 287 F.3d 138, 146-147 (2d Cir. 2002). Since plaintiffs fail to allege that any of the acts of which they complain were taken by reason of Granger's disability, the complaint fails to state a claim under the ADA. Accordingly, the branch of Commerce's motion which seeks dismissal of plaintiffs' ADA claim is granted and that claim is dismissed. For the same reason, I *sua sponte* dismiss plaintiffs' ADA claim against Harris.

III. Conclusion

For the reasons stated herein, Harris's motion is granted to the extent that Granger's claims (1) that Harris wrongfully obtained a default judgment and/or lien against Granger without properly serving her with process; (2) that the procedures Harris followed in obtaining the default judgment and/or lien against Granger are unconstitutional; (3) that Harris never "properly prosecuted any lawsuit or other legal process to obtain a bona fide lien against

---

[11] The Americans with Disabilities Act (ADA) provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Granger;" (4) that "Granger has never been served with any type of document, notice, summons or process which gave or provided notice of any proceeding or civil action which could have legally resulting with [sic] a lien against her;" and (5) that Harris has never "contacted or communicated with Granger regarding an alleged debt, lawsuit, civil action or lien," are dismissed, and the motion is otherwise denied. Commerce's motion is granted to the extent that plaintiffs' section 1985 and ADA claims are dismissed against Commerce, and the motion is otherwise denied. In addition, I *sua sponte* dismiss plaintiffs' section 1985 and ADA claims against Harris. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on **Thursday, May 10, 2007 at 11:00 a.m.** for a settlement and/or scheduling conference with authority or persons with authority to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 17, 2007
      Central Islip, N.Y.

Copies to:

Suzanne Granger and Thomas Klos, *pro se*
117 Merritts Road
Farmingdale, New York 11735

Law Office of Arthur Sanders
2 Perlman Drive, Suite 301
Spring Valley, New York 10977

Blank Rome Tenzer Greenblatt LLP
405 Lexington Avenue
New York, New York 10174